UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              )
                                    )      Chapter 7
CHESTER W. BATZKIEL and              )
CYNTHIA K. BATZKIEL,                 )
                                    )      Bankruptcy No. 06-00355
     Debtors.                        )
                                    )

**ORDER RE: MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)(1)**

This matter came before the undersigned on July 25, 2006 on Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(1). John F. Schmillen appeared for United States Trustee and Steven G. Klesner appeared for Debtors Chester W. and Cynthia K. Batzkiel. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

Among the reforms contained in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) is the addition of a Means Test, which, if certain criteria are satisfied, can create a rebuttable presumption of abuse. 11 U.S.C. § 707(b)(2). The Means Test is contained in Form B22A, which every consumer debtor filing under BAPCPA must complete.

After Debtors filed their petition, Trustee disputed certain amounts listed in Form B22A. At time of trial, Trustee's assertions were undisputed for all but one line item – vehicle operating expenses. While Trustee asserts that Debtors are eligible to claim $358 per month in expenses under the applicable IRS Local Standards, Debtors assert their actual, documented expenses are $650 per month. Debtors' other expenses are high enough that the difference between the two amounts is outcome determinative for Trustee's Motion to Dismiss. Thus, the sole issue before the Court is whether Debtors have presented special circumstances which rebut the presumption of abuse provided for in Section 707(b)(2) and embodied in Form B22A.

**FINDINGS OF FACT**

Debtors presented testimony and exhibits to document their financial circumstances. Debtors live in rural Iowa and each drives a significant distance to their place of employment. Mr. Batzkiel drives approximately 40 miles roundtrip daily to his

workplace.  Mrs. Batzkiel drives approximately 70 miles roundtrip to her workplace.  Debtors' circumstances have been complicated by Mr. Batzkiel's numerous collisions with deer on the roadway.  In 2006, he has collided with deer on three separate occasions.  Between 2003 and 2005, he collided with deer on another four occasions.  He leaves home at 4:30 a.m. and drives through areas heavily populated by deer.  Because of these frequent collisions, his auto insurance carrier has threatened to drop their auto insurance policies if they file any further deer-related claims.  As a consequence, Mr. Batzkiel has not filed any insurance claims and has been doing his own repair work.  Thus, although the Court would ordinarily only consider the expenses for one vehicle for Mr. Batzkiel's use, his circumstances warrant some consideration of the expense history of two vehicles, understanding that at any given time, one of the vehicles may be inoperable due to a deer collision.

Debtors' high fuel costs are driven by two factors: their significant commuting distances and the increasing price of gas, which has continued to rise since the IRS set its Local Standards amount.  Debtors' vehicles get low gas mileage, further increasing their fuel costs.  Debtors established that their gas expenses were approximately $373 per month.  Receipts in evidence show that Debtors' average cost per gallon of gas was $2.759.  Mrs. Batzkiel testified that her most recent gas purchase was $2.91, indicating that even in recent weeks, Debtors' fuel expenses have continued to rise.

Because Debtors commute significant distances to their respective places of employment, their other vehicle operating costs are also higher than average.  Debtors' oil change cost for one vehicle averages $13.49 per month.  Mr. Batzkiel performs his own oil changes for his two vehicles, for which no costs for materials were submitted to the Court.  Debtors replace one set of tires each year, alternating between Mr. and Mrs. Batzkiel's vehicles.  Based on the recent replacement cost for Mrs. Batzkiel's vehicle, tire replacement costs average $43.83 per month.  Debtor's auto insurance costs $147 per month.  These documented costs total $577.32 per month.  These expenses do not include annual vehicle registration costs or the amortized costs of any other maintenance for the vehicles, such as brakes, transmissions, routine repairs, and most significantly for Debtors, the cost of repairing vehicles damaged by deer collisions.

## DISMISSAL UNDER § 707(b)

Section 707(b)(1) grants the Court authority to dismiss a Chapter 7 case where "the granting of relief would be an abuse of

the provisions of this chapter." 11 U.S.C. § 707(b)(1). BAPCPA "eliminated ... [the] presumption in favor of granting chapter 7 relief to the debtor." 6 Collier on Bankruptcy ¶ 707.05[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005). Further, the threshold question for dismissal or conversion under § 707 changed from "substantial abuse" to simply "abuse." Id. The Code specifies that "the court shall presume abuse exists" if the debtor's gross income and disposable income exceed certain threshold amounts. 11 U.S.C. § 707(b)(2) (emphasis added). The calculations set forth in Section 707(b)(2), which establish those threshold amounts, constitute what is commonly known as the "Means Test." In re Johnson, ___ B.R. ___, 2006 WL 2059078, at *1 (Bankr. S.D. Ga. 2006).

## MEANS TEST

The purpose of the Means Test is to "determine whether a case should be dismissed as an abusive filing by measuring the debtor's ability to fund a hypothetical chapter 13 plan." In re Renicker, 342 B.R. 304, 308 (Bankr. W.D. Mo. 2006). Section 707(b)(7) creates a "safe harbor" from the Means Test for debtors whose income (or combined income in the case of married debtors, even if only one files for bankruptcy) falls below the median household income for their state. 6 Collier on Bankruptcy ¶ 707.05[2][b] (citing 11 U.S.C. § 707(b)(7)). Disabled veterans are also excepted from the Means Test, "but only if the indebtedness occurred primarily during a period during which the veteran was on active duty," under § 707(b)(2)(D) of the Code. Id. ¶ 707.05[2][e]. The Means Test focuses specifically on "current monthly income," defined as "the debtor's average monthly income for the six calendar months prior to the filing of the bankruptcy case." In re Pak, 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006) (citing 11 U.S.C. § 101(10A)). Thus, debtors whose "current monthly income" exceeds the state median monthly income for their household size are subject to the Means Test, unless they meet the special exception for certain disabled veterans. Id.

Debtors reported "current monthly income" of $7,926.98, which is annualized at $95,123.76. The median annual family income for a household of two persons in Iowa is $48,095. Neither Debtor is a disabled veteran. Thus, Debtors are subject to the Means Test.

The Means Test creates a statutory formula for assessing whether a rebuttable presumption of abuse arises. Pak, 343 B.R. at 241. The presumption of abuse may be rebutted by demonstrating "special circumstances." Id. (citing 11 U.S.C.

3

§ 707(b)(2)(B)(i)).  After computing "current monthly income," debtors then calculate their expenses.

  The range of expenses allowed under § 707(b)(2) is fairly comprehensive.  The first set of allowed expenses are "<u>applicable</u> monthly expense amounts specified under the National Standards and Local Standards, and the debtor's <u>actual</u> monthly expenses for the categories specified as Other Necessary Expenses."  11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).  The expense categories determined by National Standards and Local Standards are food, clothing, household supplies, personal care and miscellaneous, housing and utilities, vehicle operation/public transportation, and transportation ownership/lease (for up to two vehicles). Form B22A.  The expense categories included in Other Necessary Expenses are taxes (other than real estate or sales taxes), mandatory payroll deductions, term life insurance, court-ordered payments, education which is a condition of employment, education for dependent children who have special needs not met by public education, childcare, out-of-pocket health care, and telecommunication services.  Form B22A.

  Section 707(b)(2)(A) sets out additional expenses which may be deducted for purposes of determining disposable income.  These expenses include health insurance, disability insurance, health savings account expenses, "reasonable and necessary" care and support of elderly, chronically ill or disabled family members who cannot pay for such expenses themselves, excess "reasonable and necessary" energy costs, tuition or other costs for dependent children up to $1,500 per year, continued charitable contributions and additional food/clothing expenses up to 5% of the IRS standard.  Form B22A.  Finally, Section 707(b)(2)(A) provides an allowance to count expenses related to debt payment. These expenses include future payments on secured claims (averaged by taking all payments due within the next 60 months and then dividing by 60), any past due payments on secured claims (calculated by taking the total past due and dividing by 60), payments for priority claims such as child support obligations (calculated in the same manner as future payments on secured claims), and projected Chapter 13 administrative expenses.  Form B22A.

  Once these expenses are subtracted from "current monthly income," debtor is left with "monthly disposable income."  Form B22A.  If debtor's monthly disposable income, when multiplied by 60, is less than $6,000, the presumption of abuse does not arise. 11 U.S.C. § 707(b)(2)(A)(i).  However, if debtor's monthly disposable income, when multiplied by 60, is greater than $10,000, the presumption of abuse arises.  <u>Id.</u>  If debtor's monthly disposable income, multiplied by 60, is between $6,000

4

and $10,000, then the product of monthly disposable income multiplied by 60 is compared to 25 percent of debtor's nonpriority unsecured claims. Id. If the product is less than 25 percent of the claims, then the presumption does not arise. Id. Conversely, if the product is greater than 25 percent of those claims, then the presumption of abuse arises. Id.

Debtor and Trustee dispute a single expense category within Form B22A – Line 22, which covers vehicle operation expenses. Trustee asserts that Debtors must utilize the amount provided for the Midwest Census Region. That amount is $358 for debtors who live outside a Metropolitan Statistical Area and operate two vehicles. Trustee correctly asserts that under ordinary circumstances, this allowance would be $358 for Debtors. However, Debtors have the opportunity to present to the Court evidence establishing "special circumstances" which would warrant additional expenses above the IRS Local Standards. 11 U.S.C. § 707(b)(2)(B).

The Bankruptcy Code specifically delineates two "special circumstances": serious medical condition or active duty in the Armed Forces. 11 U.S.C. § 707(b)(2)(B)(i). Commentary suggests a myriad of other circumstances that should also qualify. Possibilities include moving expenses, security deposits, "high commuting costs, the increased price of gas, security costs in dangerous neighborhoods, or the cost of infant formula and diapers." 6 Collier on Bankruptcy ¶ 707.05[2][d]. "Indeed, any legitimate expense that is out of the ordinary for an average family, or that may have increased since the IRS guidelines were calculated, could be considered." Id. In Debtors' case, they face unusually high operating expenses related to rising gas prices where they need to commute significant distances to their respective places of employment, costs associated with apparent hazard of a daily commute that begins at 4:30 a.m. into an area densely populated by deer, and the threat from their insurance company that any further claims associated with deer collisions would result in cancellation of their auto insurance policies.

In order for Debtors to claim operating expenses under "special circumstances," they must justify actual expenses in that amount, drawn from the type of expenses defined as transportation operating expenses in the Internal Revenue Manual. Further, Debtors must itemize such expenses, provide documentation for the expenses, and explain the special circumstances that demonstrate that the expenses are "reasonable and necessary." 11 U.S.C. § 707(2)(B)(ii). If the inclusion of the expenses warranted by Debtors' special circumstances causes monthly disposable income to fall below the § 707(b)(2) threshold

5

amounts, then Debtors have rebutted the presumption of abuse. 11 U.S.C. § 707(2)(B)(iv).

In order to verify that Debtors have $650 in vehicle operating expenses, the Court must first determine what expenses fall within the category of vehicle operating as opposed to vehicle ownership expenses. The IRS Local Standard for Transportation covers the following expenses: "[v]ehicle insurance, vehicle payment (lease or purchase), maintenance, fuel, state and local registration, required inspection, parking fees, tolls, driver's license, [and] public transportation." (Trustee's Ex. 5 – Local Standards, Internal Revenue Manual § 5.15.1.9, available at http://www.irs.gov/irm/part5/ch15s01.html.) On its face, Form B22A separates the vehicle payment (lease or purchase) expense from the other expenses. Furthermore, the structure of the calculation for Line 23: Local Standards: transportation ownership/lease expense does not allow for the inclusion of any other expense if the average monthly payment for the debts secured by a vehicle exceeds the IRS standard amount. Absent any other evidence in the Record, the Court concludes that the expenses listed within the Internal Revenue Manual's Local Standards for Transportation, except for the vehicle payment (lease or purchase), are included in the vehicle operating expense category.

The Court finds that Debtors have documented a minimum of $577.32 per month in vehicle operating expenses due to their special circumstances. Incorporating that amount into the amended Form B22A (Trustee's Ex. 3), Debtors are left with $96.10 in monthly disposable income in Line 50. Multiplying $96.10 by sixty months produces $5,766. As $5,766 is less than the $6,000 floor for a presumption of abuse, Debtors' petition does not create a presumption of abuse under Section 707(b)(2).

## CONCLUSION

The Court finds that Debtors have met their burden of establishing special circumstances under 11 U.S.C. § 707(b)(2)(B). In doing so, they have rebutted the presumption of abuse.

**WHEREFORE**, Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) is DENIED.

DATED AND ENTERED: August 7, 2006

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE